UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| NURIEL DIZYN JAMAR-MAMON X, | Case No. 1:24-CV-484 |
| Plaintiff, | Judge Michael R. Barrett |
| v. | |
| UNIVERSITY OF CINCINNATI, et al., | **OPINION & ORDER** |
| Defendants. | |

This matter is before the Court on the motion for a preliminary injunction filed by Plaintiff Nuriel Dizyn Jamar-Mamon X. (Doc. 2). Defendants University of Cincinnati ("UC") and Jack Miner have responded and moved to dismiss for failure to state a claim and lack of subject matter jurisdiction. (Doc. 24). Jamar-Mamon X has also moved for the undersigned's recusal. (Doc. 32). For the following reasons, the Court will deny the motion for recusal, deny injunctive relief, and dismiss this matter with prejudice under its inherent sanction power.

I. **Background**

On September 6, 2024, Jamar-Mamon X brought the instant action and sought a preliminary injunction, alleging that Defendants had rescinded his admission to UC and taken adverse action based upon what Jamar-Mamon X termed an "alleged falsification" in his application. (Doc. 2, PageID 17). Three days later, Jamar-Mamon X filed an amended complaint asserting a violation of his Fourteenth Amendment due process rights, breach of contract, bankruptcy retaliation, racial discrimination, intentional infliction

1

of emotional distress, tortious interference with prospective business relations, and tortious interference with contractual relations. (Doc. 6, PageID 35-36).

One day after that, on September 10, Jamar-Mamon X moved for a temporary restraining order ("TRO") barring Defendants from taking any adverse actions or evicting him from student housing. (Doc. 8). Following a brief phone call with Jamar-Mamon X and counsel from the Ohio Attorney General's Office, and based upon Jamar-Mamon X's representations to the Court that he was a degree-seeking, matriculating student whose enrollment was terminated erroneously and without due process, (*see* Doc. 11), the Court issued a TRO and set a formal hearing for September 18, (Doc. 10).

During the September 18 hearing, consequential information came to light that provided the Court with a substantially clearer picture. In May 2024, under the name Nuriel Jamar, Jamar-Mamon X completed UC's basic data form for visitors who seek to take classes but are not enrolled in a degree program.[1] (Doc. 16, PageID 230). On the form, Jamar-Mamon X answered "no" when asked "[h]ave you ever pled guilty or been convicted of a criminal offense, other than a traffic violation, or are there any criminal charges currently pending against you?" (*Id.*, PageID 255). Based on this, his form was approved and he was allowed to enroll in classes and access university housing. (*Id.*, PageID 231).

Jamar-Mamon X enrolled in graduate-level courses as a non-matriculated student and lived in university housing during the summer semester. (*Id.*). Following that, he enrolled in graduate-level courses as a non-matriculated student and signed up to live in university housing for the fall semester. (*Id.*). But on August 20, UC notified Jamar-Mamon

---

[1] These visitors, so-called "non-matriculated students," receive a transcript that designates them as a visitor associated with the Adult Learning Center. (Doc. 16, PageID 230).

2

X that he had an outstanding balance of $16,556.69 for the summer semester and his fall enrollment would be put on hold if he did not pay. Although Jamar-Mamon X sent UC a check for the full amount on August 23, he then forwarded a "Notice of Bankruptcy Case Filing," advised that his check would be cancelled, and cautioned that UC was to stop all collection efforts. (*Id.*, PageID 339-41).

Upon reviewing the bankruptcy court document that Jamar-Mamon X submitted, an official at the Registrar's Office noticed that the petition had been filed under the name Jamar Mamon, and not Nuriel Jamar. (*Id.*, PageID 250). Further investigation revealed that Jamar-Mamon X has a considerable criminal history under a number of aliases, including a 2008 federal conviction for fraud under the name Kevin Blevins, *see United States v. Blevins*, 403 F. App'x 101 (7th Cir. 2010), and more recent Indiana felony convictions for battery resulting in bodily injury to a public safety official, battery by bodily waste, and resisting law enforcement, *see Mamon v. State*, 38 N.E.3d 226 (Ind. Ct. App. 2015) (table).[2]

In 2022, under the name Jamar Mamon, he pleaded guilty in Texas to disorderly conduct with a firearm and was subsequently unsatisfactorily terminated from community supervision when he allegedly violated his terms by possessing a firearm or ammunition, failing to report to his community supervision officer, and failing to remit various court costs and fees. *See State v. Mamon*, No. 168990501010 (337th Dist. Ct.—Harris Cnty.). And finally, he has been indicted and is awaiting trial in Indiana, under the name Jamar Kurile Mamon, for battery against a public safety official, resisting law enforcement, and

---

[2] Searches for Jamar-Mamon X's various aliases in Indiana public state court records yielded numerous additional convictions for, *inter alia*, criminal conversion, possession of stolen property, operating a vehicle while under suspension, and leaving the scene of an accident resulting in damage to property.

criminal trespass. (Doc. 16, PageID 357-63). None of this information was disclosed to UC.

At the close of the September 18 hearing, the Court dissolved the TRO upon finding that (1) Jamar-Mamon X failed to demonstrate a likelihood of success on the merits; (2) Defendants could suffer harm as a result of any injunctive relief; and (3) a grant of further injunctive relief would be detrimental to the public interest. (*See* Doc. 17). Before the Court now are Jamar-Mamon X's motion for a preliminary injunction, (Doc. 2), motion to strike, (Doc. 13), and motion to supplement, (Doc. 22), as well as Defendants' motion to dismiss, (Doc. 24). Also before the Court is Jamar-Mamon X's motion for the recusal of the undersigned. (Doc. 32).

## II. Motion for Disqualification

### a. Legal Standard

Pursuant to 28 U.S.C. § 455, a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Recusal is required when a judge "has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." *Id.* § 455(b)(1); *see Garrett v. Ohio State Univ.*, 60 F.4th 359, 368 (6th Cir. 2023). "[T]he terms 'bias or prejudice' connote instances of partiality or opinions that are 'somehow *wrongful or inappropriate*.'" *United States v. Liggins*, 76 F.4th 500, 506 (6th Cir. 2023) (quoting *Liteky v. United States*, 510 U.S. 540, 550-52 (1994)).

The Sixth Circuit has repeatedly affirmed that "a judge is presumed to be impartial, and the party seeking disqualification 'bears the substantial burden of proving otherwise.'" *Scott v. Metro. Health Corp.*, 234 F. App'x 341, 352 (6th Cir. 2007) (quoting *United States*

4

*v. Denton*, 434 F.3d 1104, 1111 (8th Cir. 2006)). Motions for recusal are ultimately committed to the sound discretion of the district court, *Youn v. Track, Inc.*, 324 F.3d 409, 422 (6th Cir. 2003), and "there is as much obligation upon a judge not to recuse himself when there is no occasion as there is for him to do so when there is," *Easley v. Univ. of Mich. Bd. of Regents*, 853 F.2d 1351, 1356 (6th Cir. 1988) (quoting *In re Union Leader Corp.*, 292 F.2d 381, 391 (1st Cir. 1961)).

b. **Analysis**

Jamar-Mamon X claims that impartial adjudication is not possible here because the undersigned was born and raised in Cincinnati, earned degrees from UC, and previously served a term on UC's board of trustees. (Doc. 32, PageID 473). But Jamar-Mamon X provides no actual explanation of why he thinks the undersigned's impartiality "might reasonably be questioned," and it is well established that a judge "need not recuse himself based on the subjective view of a party, no matter how strongly that view is held." *Garrett*, 60 F.4th at 369 (cleaned up).

Simply put, there is no factual basis for Jamar-Mamon X's contention that "there exists a potential conflict of interest that raises questions about [the undersigned's] impartiality in adjudicating matters involving his alma mater," (Doc. 32, PageID 473), and absolutely no legal support for the idea that a judge cannot be impartial when adjudicating a case merely because his alma mater is party to that case. In fact, "[a]lumni connections are not a reasonable basis for questioning a judge's impartiality, even if alumni contribute financially or participate in educational activities." *Roe v. St. Louis Univ.*, 746 F.3d 874, 886 (8th Cir. 2014); *see also Garrett*, 60 F.4th at 369-70. Jamar-Mamon X offers nothing

5

more than a subjective and wholly conclusory allegation of bias, and thus does not meet the burden of demonstrating that recusal is appropriate or necessary.

### III. Preliminary Injunctive Relief

#### c. Legal Standard

Preliminary injunctions are governed by Federal Rule of Civil Procedure 65. "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Poffenbarger v. Kendall*, 588 F.Supp.3d 770, 782 (S.D. Ohio 2022) (quoting *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981)). "A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). A movant's burden is higher than that required to survive a motion to dismiss or even a motion for summary judgment. *Enchant Christmas Light Maze & Mkt. v. Glowco, LLC*, 958 F.3d 532, 539 (6th Cir. 2020); *see also Doe v. Knox Cnty. Bd. Of Educ.*, No. 22-5317, 2022 U.S. App. LEXIS 22897, at *3 (6th Cir. Aug. 17, 2022); *Hartman v. Acton*, 613 F.Supp.3d 1015, 1021-1022 (S.D. Ohio 2020).

The Court looks to four factors when reviewing a motion for a preliminary injunction: "(1) whether there is a likelihood of success on the merits of the plaintiff's claim; (2) whether the plaintiff will suffer irreparable harm if the injunction is not granted; (3) whether others would be harmed by granting the injunction; and (4) whether the public good is served by issuing the injunction." *Doe v. Univ. of Cincinnati*, 223 F.Supp.3d 704, 709 (S.D. Ohio 2016). Notably, "where there is no likelihood of either success on the

merits or irreparable harm, an injunction in unwarranted—regardless of the showing on the other factors." *Union Home Mortg. Corp. v. Cromer*, 31 F.4th 356, 366 (6th Cir. 2022).

### a. Analysis

As a threshold matter, Defendants argue that Jamar-Mamon X's underlying procedural due process claim is barred by sovereign immunity. "Eleventh Amendment immunity 'bars all suits, whether for injunctive, declaratory or monetary relief, against the state and its departments. . . .'" *Doe v. Miami Univ.*, 247 F.Supp.3d 875, 883 (S.D. Ohio 2017) (quoting *McCormick v. Miami Univ.*, 693 F.3d 654, 661 (6th Cir. 2012)). Because UC is a public university in the State of Ohio, it qualifies as an arm of the state and is therefore generally immune from suit.[3] *See id.*

However, "[s]uits for injunctive and declaratory relief against state officials acting in their official capacities . . . are permitted in limited circumstances." *Doe v. Cummins*, 662 F. App'x 437, 443-44 (6th Cir. 2016) (citing *Ex parte Young*, 209 U.S. 123, 155-56 (1974)). Those limited circumstances include suits seeking prospective injunctive relief from state officials. *Doe v. Miami Univ.*, 247 F.Supp.3d at 883. Jamar-Mamon X seeks the reinstatement of his admission to UC, and this Court has held previously that "[a] claim for reinstatement constitutes prospective injunctive relief." *Doe v. Ohio State Univ.*, 219 F.Supp.3d 645, 654 (S.D. Ohio 2016). Consequently, Defendants are not shielded from that component of Jamar-Mamon X's claim, and the Court will assess the likelihood of success on the merits.

In granting a TRO, the Court initially relied upon Jamar-Mamon X's representation that he was a "visiting graduate researcher" who was "enrolled in a doctoral program in

---

[3] This reasoning applies to Miner, as well, because he has been sued in his official capacity as an administrator at UC.

Political Science." (Doc. 8, PageID 48). Jamar-Mamon X claimed that the rescission of his admission and eviction from university housing "was done without proper due process and was based on unfounded allegations of falsification on [his] application."[4] (*Id.*). But as subsequent filings have laid bare, that is simply not true.

First, it is not clear that Jamar-Mamon X even has a property interest in continued enrollment or the coursework he completed. Protected property interests are "defined by existing rules or understandings that stem from an independent source such as state law," *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972), but Jamar-Mamon X has identified no such source. His cause is potentially also damaged by the fact that he never actually paid the balance due to UC for tuition, lodging, and a meal plan. And as Defendants note, Jamar-Mamon X "did not appear to have an undergraduate bachelor's degree from any university, which would make it impossible to transfer graduate level courses" or obtain admission to graduate programs in the first place. (Doc. 25, PageID 430).

But even assuming the existence of a protected property interest, Jamar-Mamon X has provided no authority in support of his argument that he was entitled to the full disciplinary procedure generally afforded to enrolled, degree-seeking students under the UC student code of conduct. *Cf. Simmons v. Wayne Cnty. Cmty. College Dist.*, No. 2:11-CV-14936, 2014 U.S. Dist. LEXIS 24542, at *16 (E.D. Mich. Feb. 7, 2014) ("The mere fact that faculty base their decision on a student's conduct . . . is insufficient to establish that the decision was disciplinary rather than academic."). Courts have typically looked

---

[4] Jamar-Mamon X now also asserts that Defendants retaliated against him on account of his bankruptcy filing, but the Court sees a far less sinister reason behind the temporal proximity of the bankruptcy filing and the adverse actions: Jamar-Mamon X applied to and attended UC under a name that was not his legal name, and Defendants only became aware of his aliases—with their accompanying criminal histories— when he sent them a bankruptcy document.

"to the general rule that '[a]n academic dismissal is where a student's scholarship *or conduct* reflects on the personal qualities necessary to succeed in the field in which he or she is studying, and can be based on at least partially subjective appraisal of those qualities.'" *Id.* (quoting *Allahyerdi v. Regents of the Univ. of N.M.*, No. CIV 05-277, 2006 U.S. Dist. LEXIS 27682, at *61 (D.N.M. Apr. 25, 2006)). "In the context of an academic dismissal, procedural due process does not require a formal hearing before a decision-making body either before or after the termination is made." *Bazzi v. Wayne State Univ.*, No. 21-CV-10642, 2023 U.S. Dist. LEXIS 326, at *24 (E.D. Mich. Jan. 3, 2023); *see Bd. of Curators of Univ. of Mo. v. Horowitz,* 435 U.S. 78, 86 (1978).

Jamar-Mamon X was, in his own words, "a non-matriculated student who has yet to apply for formal admission to the university," and UC rescinded his admission "for falsifying his application." (*Id.*, PageID 424-25). Although UC's adverse action was not based directly upon Jamar-Mamon X's course performance, it was premised upon a specific instance of Jamar-Mamon X's conduct that was itself reflective of his ability and qualifications to succeed academically and professionally. The simple fact is that Jamar-Mamon X fraudulently obtained admission to a UC program, which the Court sees as an instance "where the factual question was sharply focused and extremely narrow, and defendants had before them all the pertinent information." *Martin v. Helstad*, 578 F.Supp. 1473, 1485 (W.D. Wisc. 1983). And because the rescission of Jamar-Mamon X's admission was academic in nature—as opposed to disciplinary—he was not entitled to a formal hearing or other proceeding, he cannot establish a legitimate claim of entitlement to continued enrollment at UC or the non-transferrable coursework he completed there, and he is unlikely to succeed on the merits of his procedural due process claim.

IV. <u>**Sanctions Under the Court's Inherent Authority**</u>

    d. <u>**Legal Standard**</u>

The Court may sua sponte issue sanctions under its inherent powers "when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons, or when the conduct is tantamount to bad faith." *Metz v. Unizan Bank*, 655 F.3d 485, 489 (6th Cir. 2011) (cleaned up); *cf. Chambers v. NASCO, Inc.*, 501 U.S. 32, 49 (1991) ("The Court's prior cases have indicated that the inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct."). Even pro se litigants, regardless of their level of legal sophistication, may not disregard the law or engage in abusive conduct. *See, e.g.*, *Givens v. Criswell*, No. 5:08-CV-25, 2010 U.S. Dist. LEXIS 63451, at *6-7 (N.D. W. Va. June 24, 2010).

To be sure, the Court's authority "must be exercised with the greatest restraint and caution, and then only to the extent necessary." *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 461 (4th Cir. 1993); *see also Gueye v. Comair, Inc.*, No. 08-66-WOB, 2009 U.S. Dist. LEXIS 137431, at *23-26 (E.D. Ky. July 9, 2009). But "a court's inherent power to dismiss a case and protect the sanctity of the judicial process is never more compelling than in a situation of individuals who engage in fraud upon the court." *Plastech Holding Corp. v. WM GreenTech Auto. Corp.*, 257 F.Supp.3d 867, 878 (E.D. Mich 2017) (quoting *Perna v. Elec. Data Sys. Corp.*, 916 F.Supp. 388, 397 (D.N.J. 1995)). In addition, "it is not an abuse of discretion to dismiss, even though other sanctions might be workable, if dismissal is supportable on the facts." *Laukus v. Rio Brands, Inc.*, 292 F.R.D. 485, 512 (N.D. Ohio 2013) (quoting *Regional Refuse Sys., Inc. v. Inland Reclamation Co.*, 842 F.2d 150, 155 (6th Cir. 1988)).

### e. <u>Analysis</u>

Jamar-Mamon X initially represented to the Court that the omission of his criminal history on UC's basic data form was "a complete oversight." (Doc. 11, PageID 65). But the expungement in 2015 of a single felony forgery conviction from Indiana does little to detract from Jamar-Mamon X's voluminous criminal history, nor does it change the fact that he knowingly concealed and misrepresented that criminal history to both Defendants and the Court. After all, "[f]elony status is simply not the kind of thing that one forgets." *Wallace v. United States*, 43 F.4th 595, 603 (6th Cir. 2022) (quoting *Greer v. United States*, 593 U.S. 503, 508 (2021)).

Jamar-Mamon X has a history of fabrication and obfuscation, and even continued to perpetuate demonstrable falsehoods in his attempt to appeal the Court's dissolution of the TRO. This is far from a novel occurrence.[5] While Jamar-Mamon X was incarcerated, a judge in the Southern District of Indiana noted that he had "a litigation track record involving three or more 'strikes' because litigation in which he was the plaintiff was dismissed for failure to state a claim upon which relief could be granted, or as frivolous." *Mamon v. Shepherd*, No. 1:13-CV-345, Doc. 21, PageID 77 (S.D. Ind. Jan. 17, 2014). To that end, the Northern District of Indiana also designated Jamar-Mamon X a "restricted filer" on account of his repeated (and knowing) attempts to circumvent filing safeguards.

---

[5] Jamar-Mamon X's dishonesty extends further, as evidenced by the representation in his supplemental complaint that he "was taking courses that lead to tiered degrees in Master of Legal Studies, and he was also pursuing a PhD in Political Science." (Doc. 22, PageID 386). As the Court is now aware, Jamar-Mamon X was not pursuing an advanced degree and he lacked the academic credentials to even enroll in the aforementioned programs. Nevertheless, that did not stop him from representing on his resume that he had earned a Bachelor of Business Administration from the University of Houston, or on his LinkedIn account that he was pursuing a Master of Legal Studies and a PhD in Political Science at UC. (Doc. 16, PageID 279, 282).

11

*See Blevins v. O'Malley*, No. 1:10-CV-401, 2010 U.S. Dist. LEXIS 127589, at *3, n.2 (N.D. Ind. Dec. 2, 2010).

Similarly, a panel of the Tennessee Court of Appeals noted that a civil action brought by Jamar-Mamon X was complicated by "a very lengthy and onerous procedural history, which was principally due to [his] acts and omissions." *Mamon v. Geico Indem. Ins. Co.*, No. M2016-01145-COA-R3-CV, 2017 Tenn. App. LEXIS 618, at *3 (Tenn. Ct. App. Sep. 15, 2017). And on at least one prior occasion, a state court judge in Indiana sanctioned Jamar-Mamon X with the dismissal of his civil case after repeated failures to comply with a discovery order. *See Mamon v. Garrity*, 102 N.E.3d 347 (Ind. Ct. App. 2018) (table). As should be obvious now, this is not a matter of a pro se litigant who inadvertently violated a procedural rule on one occasion; rather, the Court is faced with an individual who continues to disrespect and abuse the justice system.

In light of the foregoing, the Court opts to exercise its "inherent authority to sanction a party who has 'acted bad faith, vexatiously, wantonly, or for oppressive reasons,' or who has engaged in conduct that was 'tantamount to bad faith.'" *Ndoye v. Major Performance LLC*, No. 1:15-CV-380, 2017 U.S. Dist. LEXIS 28923, at *30 (S.D. Ohio Mar. 1, 2017) (quoting *Laukus*, 292 F.R.D. at 502-03). Jamar-Mamon X is proceeding in forma pauperis, "so by definition he has no resources to pay any kind of monetary sanction, much less one sufficient to deter him from repeating the same behavior." *Gueye v. UC Health*, No. 1:13-CV-673, 2014 U.S. Dist. LEXIS 141834, at *16 (S.D. Ohio Oct. 6, 2014). As a result, the Court finds that no sanction short of dismissal with prejudice will adequately address Jamar-Mamon X's egregious misconduct and deter future instances of misconduct.

## V. Conclusion

For the foregoing reasons, the motion for a preliminary injunction, (Doc. 2), is **DENIED**, the motion for disqualification, (Doc. 32), is **DENIED**, and this matter is **DISMISSED with prejudice**. Jamar-Mamon X's motion to strike, (Doc. 13), and motion to supplement, (Doc. 22), are **DENIED as moot**, as is Defendants' motion to dismiss, (Doc. 24).

Jamar-Mamon X is **CAUTIONED** that any future misconduct or vexatious acts may result in filing restrictions or additional sanctions, whether under the Court's inherent authority or pursuant to Federal Rule of Civil Procedure 11. Furthermore, the Court **CERTIFIES** that an appeal from this order would *not* be taken in good faith. 28 U.S.C. § 1915(a)(3); *see* Fed. R. App. P. 24(a)(3)(A).

**IT IS SO ORDERED.**

                */s/ Michael R. Barrett*
                Michael R. Barrett
                United States District Judge